# United States District Court

## CENTRAL DISTRICT OF ILLINOIS

Ralph King (Vincent F. Hudson)
_____

          Plaintiff

          vs.

_____
_____
_____
_____
_____
_____
_____

          Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. *14-1385*

*(The case number will be assigned by the clerk)*

*(List the full name of ALL plaintiffs and defendants in the caption above. If you need more room, attach a separate caption page in the above format).*

## COMPLAINT*

*Indicate below the federal legal basis for your complaint, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants). However, 42 U.S.C. § 1983 and "Bivens" do not cover all prisoners' claims. Many prisoners' legal claims arise from other federal laws. Your particular claim may be based on different or additional sources of federal law. You may adapt this form to your claim or draft your own complaint.*

☒   42 U.S.C. §1983 (state, county or municipal defendants)

☐   Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)(federal defendants)

☐   Other federal law: _____

☐   Unknown _____

*\*Please refer to the instructions when filling out this complaint. Prisoners are not required to use this form or to answer all the questions on this form in order to file a complaint. This is not the form to file a habeas corpus petition.*

## I. FEDERAL JURISDICTION

Jurisdiction is based on 28 U.S.C. § 1331, a civil action arising under the United States Constitution or other federal law. *(You may assert a different jurisdictional basis, if appropriate).*

## II. PARTIES

A. Plaintiff:

Full Name: Vincent Earl Hudson A.k.t Ralph Sims

Prison Identification Number: MC0363

Current address: Menard Correctional Center 711 Kaskaskia

Street Menard IL 62259 - 0711

*For additional plaintiffs, provide the information in the same format as above on a separate page. If there is more than one plaintiff, each plaintiff must sign the Complaint, and each plaintiff is responsible for paying his or her own complete, separate filing fee.*

B. Defendants

Defendant #1:

Full Name: Randy Pfister

Current Job Title: Warden (As of Dec 2013)

Current Work Address: Pontiac Correctional Center P.O. Box

99 Pontiac IL 61764 (As of Dec 2013)

Defendant #2:

Full Name: Marvin Reed

Current Job Title: Assistant Warden (As of Dec 2013)

Current Work Address: Pontiac Correctional Center P.O. Box

99 Pontiac IL 61764 (As of Dec 2013)

Defendant #3:

Full Name: Helen Hamilton

2

Current Job Title: _Lieutenant (as of Dec 2013)_

Current Work Address _Pontiac Correctional Center, P.O. Box_
_QQ Pontiac Il 61764 (as of Dec 2013)_

Defendant #4:

Full Name: _Adrian Corley_

Current Job Title: _Correctional Officer (as of Dec 2013)_

Current Work Address _Pontiac Correctional Center P.O. Box_
_QQ Pontiac Il. 61764_

Defendant #5:

Full Name: _Blanchard (first name unknown)_

Current Job Title: _Major (as of Dec 2013)_

Current Work Address _Pontiac Correctional Center P.O. Box_
_QQ Pontiac Il 61764 (as of Dec 2013)_

*For additional defendants, provide the information in the same format as above on a separate page.*

## III. LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or appeal in forma pauperis in federal court if that prisoner has "on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A.  Have you brought any other lawsuits in state or federal court dealing with the same facts involved

in this case?          Yes  ☐          No  ☒

If yes, please describe _____

_____

B.  Have you brought any other lawsuits in federal court while incarcerated?

Yes  ☒          No  ☐

3

# I. PARTIES (continued)

B. Defendants

Defendant #6:
Full Name: (First name unknown) Scranum
Current Job Title: Lieutenant (as of Dec 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL
61764 (as of Dec. 2013)

Defendant #7:
Full Name: (First name unknown) Tammac
Current Job Title: Correctional Officer (as of Dec. 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac
IL 61764 (as of Dec. 2013)

Defendant #8:
Full Name: (First name unknown) McBride
Current Job Title: Correctional Officer (as of Dec. 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac
IL 61764 (as of Dec. 2013)

Defendant #9:
Full Name: (First name unknown) Loveren
Current Job Title: Correctional Officer (as of Dec. 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac,
IL 61764 (as of Dec. 2013)

Defendant #10:
Full Name: (First name unknown) Price
Current Job Title: Correctional Officer (as of Dec. 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac,
IL 61764 (as of Dec. 2013)

II. Parties (continued)

B. Defendants

Defendant #11:
    Full Name: (First name unknown) Dalton
    Current Job Title: Correctional Officer (as of Dec. 2013)
    Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL.
    61764 (as of Dec. 2013)

Defendant #12:
    Full Name: (First name unknown) Newhall
    Current Job Title: Correctional Officer (as of Dec. 2013)
    Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL.
    61764 (as of Dec. 2013)

Defendant #13:
    Full Name: (First name unknown) Henderson
    Current Job Title: Correctional Officer (as of Dec. 2013)
    Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL.
    61764 (as of Dec. 2013)

Defendant #14:
    Full Name: (Name unknown) John Doe I
    Current Job Title: Correctional Officer (as of Jan. 2013)
    Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL.
    61764 (as of Jan. 2013)

Defendant #15:
    Full Name: (Name unknown) John Doe II
    Current Job Title: Correctional Officer (as of Jan. 2013)
    Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL.
    61764 (as of Jan. 2013)

I. Parties (continued)

B. Defendants

Defendant #16:
Full Name: (Name Unknown) John Doe III
Current Job Title: Correctional Officer (as of Jan 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL. 61764 (as of Jan 2013)

Defendant #17:
Full Name: (Name Unknown) John Doe II
Current Job Title: Medical Technician (as of Jan 2013)
Current Work Address: Pontiac Correctional Center, P.O. Box 99, Pontiac, IL. 61764 (as of Jan 2013)

C. If your answer to B is yes, how many? ___3___ Describe the lawsuit(s) below.

1. Name of Case, Court and Docket Number _Kings v. Marmol, et al., Northern District of Illinois, 09-C-5864_

2. Basic claim made _Excessive Force - Eighth Amendment Violation_

3. Disposition (That is, how did the case end? Was the case dismissed? Was it appealed? Is it still pending?) _Case dismissed_

*For additional cases, provide the above information in the same format on a separate page.*

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Prisoners must exhaust available administrative remedies before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). You are not required to allege or prove exhaustion of administrative remedies in the complaint. However, your case must be dismissed if the defendants show that you have not exhausted your administrative remedies, or if lack of exhaustion is clear from the complaint and its attachments. You may attach copies of materials relating to exhaustion, such as grievances, appeals, and official responses. These materials are not required to file a complaint, but they may assist the court in understanding your claim.*

A. Is there a grievance procedure available at your institution? Yes ☒  No ☐

B. Have you filed a grievance concerning the facts relating to this complaint?

Yes ☒  No ☐

If your answer is no, explain why not _____

_____

C. Is the grievance process completed? Yes ☒  No ☐

II. Litigation History (continued)

C. Describe the lawsuits below.

1. Kings v. Zurala, et Al., Northern District of Illinois, 10-C-0499
2. Excessive Force - Eighth Amendment Violation
3. Case ~~~~~~~ Settled


1. Kings v. Smith, Central District of Illinois, 09-cv-2227
2. Excessive Force - Eighth Amendment Violation
3. Case Dismissed

## V. STATEMENT OF CLAIM

Place(s) of the occurrence  Pontiac Correctional Center

Date(s) of the occurrence  12/1/12 through 12/11/12 and 1/6/13 through 1/11/13

*State here briefly the FACTS that support your case. Describe what each defendant did to violate your federal rights. You do not need to give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph. Unrelated claims should be raised in a separate civil action.*

*THE COURT URGES YOU TO USE ONLY THE SPACE PROVIDED. Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement" of your claim showing that you are entitled to relief. It is best to include only the basic, relevant facts, including dates, places, and names.*

Parties

1) The Plaintiff, Ralph Kings (Vincent E. Hudson), was incarcerated at Pontiac Correctional Center (P.C.C) during the events described in this complaint.

2) Defendants (Def.) McBride, Laurant, Price, Cotton, Newhall and Henderson at all times relevant were Correctional Officers (C.O.) employed at P.C.C. They are sued in their individual capacities.

3) Def. John Doe I, John Doe I, and John Doe II at all relevant times were C.O. employed at P.C.C. They are sued in their individual capacities.

4) Def. Tacoman at all relevant times was a C.O. or Temporary Lieutenant employed at P.C.C. He is sued in his individual capacity.

5) Def. Scroggum at all relevant times was the Lieutenant (Lt.) of North Houses Segregation (Seg.) employed at P.C.C. He is sued in his individual capacity.

6) Def. Blanchard at all times relevant was the Major of North House's Seg. employed at P.C.C. He is sued in his individual capacity.

7) Def. Adrian Gerisu at all relevant times was a C.O. who sat as a member of the Adjustment Committee (A.C.) employed at P.C.C. He is sued in his individual capacity.

8) Def. Helen Hamilton at all relevant times was the Lt. who sat as chairperson on the A.C., employed at P.C.C. She is sued in her individual capacity.

9) Def. Marvin Reed at all relevant times was the Assistant Warden of Programs, over A.C. employed at P.C.C. He is sued in his official and individual capacities.

10) Def. Randy Pfister at all relevant times was the Warden responsible for approving all A.C. recommendations and supervising all practices and policies administered by P.C.C staff, employed at P.C.C.

5

He is sued in his official and individual capacities.

11) Def. John Doe II. at all time relevant was a medical technician (med. tech.) employed at P.C.C. He is sued in his individual capacities.

12) All Def. have acted, and continue to act under color of state law at all time relevant to this complaint.

13) Dec. 1st 2012, while being escorted to the Health Care Unit (H.C.U.) by Def. McBride for his hunger-strike checkup, Plaintiff stopped to talk to Def. Blechard but tripped over his ankle shackles and collided into Def. Blechard, head first.

14) Plaintiff was restrained and controlled by Def. McBride who was holding Plaintiff's lead-chain this whole time, and Def. McBride proceeded to escort Plaintiff to the H.C.U.

15) When Plaintiff returned from H.C.U. Def. Scroqum, Tanaman and Loyrant was waiting to assist Def. Mc-Bride in escorting Plaintiff to his cell.

16) Def. Scroqum, Tanaman, Loyrant and McBride then escorted Plaintiff to his cell and took all of his personal property out his cell, even though Plaintiff never misused, threatened to misuse or displayed any signs that he would misuse any of his personal property.

17) Def. Scroqum informed Plaintiff that he was being stripped out for assaulting Def. Blechard.

18) Def. Scroqum ordered Plaintiff to get on his knees and put his forehead on the wall. Plaintiff complied, and Def. McBride and Loyrant held Plaintiff while Def. Tanaman took ankle shackles and handcuffs off Plaintiff.

19) Def. Tanaman then began to take Plaintiff's clothes off him, and when Plaintiff attempted to refuse his body was shoved into the wall. And Def. Tanaman, McBride and Loyrant yanked and snatched all Plaintiff's clothes off.

20) All while Plaintiff was aggressively being stripped. Def. Tanaman, McBride and Loyrant were threatening to fuck him up if he moved, and how he's going to pay for assaulting Def. Blechard, Plaintiff didn't resist.

21) Plaintiff was left inside that empty-cold-concrete slab at pest-(8) naked and hungry for 24 hours. And it got so unbearably cold and uncomfortable that night that plaintiff cried himself to sleep.

22) The next day, staff had to give Plaintiff a jumpsuit to wear to be seen medical about his hunger-strike. And after complaining to medical, Plaintiff was given an old dirty mattress and told he will get his property after 72 hours.

23) Plaintiff was deprived of his personal property, (hygiene products, clothing, legal material, etc.) inside that cold cell for another 9 day. 11 days altogether, despite all his pleads and request.

24) The whole seizure and deprivation of Plaintiff's personal property was done under the guise of a practice

and policy which can be utilized at any time for any purpose, as it's been used against Plaintiff for retaliation.

25) Jan. 6th 2013 Def. Tanaman, Laurant and Price ordered Plaintiff at his cell, to cuff up for a strip-out. Plaintiff asked why, and was told for allegedly commiting a Sexual Misconduct earlier that day.

26) Plaintiff attempted to plead his case, but was told by Def. Tanaman that since he assaulted Def. Blachard he will be stripped out for any and everything. And if Plaintiff refuse he will be turned up and still stripped out.

27) Plaintiff complied and Def. Tanaman, Laurant and Price took all of Plaintiff personal property, except under clothes and he had on, shower shoes and mattress.

28) After 72 hours, Def. Newhall and Natton refused to give Plaintiff his property back. And fearing that he'll be deprived of his property as long or longer than last time, Plaintiff covered the observation window in his cell for attention.

29) Adventually, Def. Scronum, Newhall, Natton and Henderson showed up and ordered Plaintiff to uncover his window. Plaintiff informed them that his 72 hour strip out ended earlier and he just wants his property back.

30) Def. Scroum told Plaintiff that since he covered window, he's being placed on another 72 hour strip out and ordered Plaintiff to cuff up to have remaining property to out of cell.

31) Plaintiff refused and requested to speak to Def. Scroum's superior.

32) Def. Scroum threatened to mace Plaintiff if he dont cuff up. Plaintiff refused, again.

33) Minutes later Def. Blachard arrived on location with John Doe I, II and III. Def. Blachard told Plaintiff that if he dont cuff up to be stripped out he will mace him, go inside his cell and beat his ass, personally.

34) Out of fear from Def. Blachard's threat and as a precautionary defensive measure, Plaintiff began to construct a make-shift shelter around his vent to breath and be protected from mace.

35) By time Plaintiff's chuck hole was opened, Plaintiff was hid in the make-shift shelter.

36) Def. Blachard sprayed mace inside cell and closed chuckhole. And thats when Plaintiff realized shelter didn't work.

37) Plaintiff began coughing, hollered out that he was coming to the door to cuff up and walked to door.

38) Then without warning or provocation chuckhole was opened and cell was maced a second time, spraying Plaintiff in his face and body.

39) The door was opened and, out of fear of being beaten to death inside cell where cameras can't see, Plaintiff blindly rushed out of cell. Only to be instantly grabbed, slammed to floor and restrained with cuffs and shackles.

40) Plaintiff was lifted off floor and half dragged - half pushed down the gallery and outside this cell house's door, off to the side where the cell house's cameras can't see.

7 (A)

41.) Once outside, Plaintiff was hit with a blunt object in back of his head causing him to lose his balance.

42.) Then Plaintiff was slammed to the concrete on his face and frontal body.

43.) Plaintiff experienced a knee pressing down on his back, hands violently twisting and bending his hands and hand-cuffs, hands choking him around the neck, fist punching him in face and head, and feets kicking, stomping and standing on his legs, ankles and shackles, for an immeasurable amount of time.

44.) Eventually, the beating stopped and Plaintiff was lifted to his knees, and his head was pulled backwards, in an attempt to have his eyes cleansed by Def. John Doe IV.

45.) Def. John Doe IV informed Plaintiff that he must open his eyes in order to have them cleaned. And Plaintiff felt liquid being poured onto his eye lids.

46.) Plaintiff then felt contaminated fingers trying to pry his eyes opened, causing him even more pain, and making it even harder to open his eyes to have his eyes properly cleaned and rinsed.

47.) Plaintiff couldn't fully open his eyes because of pain, so Def. John Doe IV wouldn't pour anymore of the liquid on Plaintiff's eye-lids, claim he couldn't clean Plaintiff's eyes properly.

48.) Plaintiff began telling Def. John Doe IV how he's been beat up, thinks his hands broke, and need medical treatment for all his injuries, and pain, but Def. John Doe IV, never responded.

49.) Plaintiff was then picked up and carried back into the cell house and placed inside a cell, without having mace cleaned.

50.) Inside cell, Def. took handcuffs and shackles off Plaintiff, aggressively stripped him of all his clothes. And left him on the floor of that empty cell naked.

51.) Plaintiff tried to use the sink found out all the water was turned off, and was force to use the water left in toilet to try to clean the mace out his eyes.

52.) Plaintiff was left in that cell with no water or property, suffering the burning mace which stayed active, as a result of perspiration, especially in his arm-pits, head and genital area, for 48 hours.

53.) Throughout paragraphs 41 through 52, Plaintiff was without vision, therefore unable to see which Def. did what.

54.) Throughout paragraphs 41 through 54, Plaintiff never resisted or posed any threat to justify the Def. actions.

55.) Plaintiff was served a Disciplinary Reports (DR) containing infractions stemming from the described Jan. 9th, 2013 incidents. Then tried for those DR, by an AC consisting of Def. Hamilton and Corley.

56.) Def. Hamilton and Corley are both White. Therefore, the AC didn't have a minority member as it should've. Thus, making the whole disciplinary hearing unlawful.

57.) AC found Plaintiff guilty of all infractions, recommended actions against Plaintiff and Def. Pfister approved recommendations.

## CLAIMS FOR RELIEF: I. Denial of Due Process of Law - A. Seizure of Property

58.) Def. Screacum, Tanamoor, Lauront and McBride denied Plaintiff due process, of law, as described in paragraphs 16 through 19, when they took Plaintiff's personal property, before Plaintiff received written notices and/or disciplinary hearing for alleged infractions. Def. were acting beyond a good faith effort to restore order and acted with malicious and sadistic intent.

7(b)

59.) Def. Tanaman, Laurant and Frics, denied Plaintiff, due process of law, as described in paragraphs 85 through 87, when they took Plaintiff's personal property before Plaintiff received written notice and/or disciplinary hearing for alleged infraction. Def. were acting in good faith effort to restore order and acted with malicious and sadistic intent.

60.) Def. Pfister and Blachard denied Plaintiff due process of law, as described in paragraphs 16 through 19 and 25 through 27, by employing "strip-out" policy to be openly practiced under their supervision aiding their subordinates to take Plaintiff's property without due process.

## B. Unlawful Disciplinary Proceeding

61.) Def. Hamilton and Corley denied Plaintiff due process of law by having their committee were suppose to have atleaste one minority member, but still trying and finding Plaintiff guilty of DR in a proceeding, with no minority member.

62.) Def. Assad denied Plaintiff due process of law by allowing an AC consisting of no minority staff member to function, under his supervision.

63.) Def. Pfister denied Plaintiff due process of law by signing off on and approving recommended actions of an AC with no minority member.

## I. Deprivation of Property

64.) Def. Scranum, Tanaman, McBride, Laurant, Frics, Dalton and Neunall unlawfully deprived Plaintiff of his personal property, as described in paragraphs 16 through 28, when they withheld Plaintiff's property a total of 13 days for no justifiable reason.

65.) Def. Pfister and Blachard denied and unlawfully deprived Plaintiff of his personal property, as described in paragraphs 16 through 28, by allowing "strip-out" policy to be practiced openly under their supervision aiding their subordinates to withhold Plaintiff property for no justifiable reason.

## II. Excessive Use of Force - A. Chemical Agents

66.) Def. Blachard used excessive force against Plaintiff when after hearing Plaintiff coughing and hollering he was coming to the door to cuff up, he maced Plaintiff a second time as described in paragraphs 37 and 38. Def. acted beyond a good faith effort to restore order and acted maliciously and sadistically to inflict pain on Plaintiff.

## B. Physical

67.) Def. Who participated in the physical assault on Plaintiff, described in paragraphs 40 through 45 used excessive force against Plaintiff and their actions were beyond a good faith effort to restore order, but malicious and sadistically to inflict pain.

## C. Liability for Force

68.) Def. Blachard, Scranum, Neunall, Dalton, Henderson, John-Doe I, II, and III are all liable not only for the use of force against Plaintiff, that was excessive, but for failing to intervene and stop the physical assault on Plaintiff, described in paragraphs 40 through 45. Def. actions and inactions were beyond a good faith effort to restore order but malicious and sadistically to inflict pain.

## IV. Tort Claims For Excessive Forces - A. Assault

69.) Def. actions described in paragraphs 40 through 45 constitutes the tort of assault under the law of Illinois.

## B. Battery

70.) Def. actions described in paragraphs 40 through 45 constitutes the tort of battery under the law of Illinois.

## C. Emotional Distress

71.) Def. actions described in paragraphs 16 through 50 constitute the tort of intentional infliction of emotional distress under the law of Illinois.

7 (c)

## V. Deliberate Indifference to Serious Medical Need - A. Medical Staff

72.) Def. John Doe II's conduct and inactions, described in paragraphs 46 through 48, constitutes deliberate indifference to plaintiff's serious medical needs.

### B. Correctional Staff

73.) Def. Blanchard, Scronum, Newhall, Dalton Henderson, John Doe's I, II and III conduct, actions and inactions, described in paragraphs 46 through 50, constitute deliberate indifference to plaintiff's serious medical needs.

## VI. Cruel and Unusual Punishment

74.) Def. Blanchard, Scronum, Tanaman, McBride, Levrant, Price, Dalton, Newhall, Henderson, John Doe's I, II, III and Pfister's conduct, actions and inactions, as well as policies and practices allowed under their supervision, described in paragraphs 16 through 50, violated plaintiff's eighth amendment right to be free from Cruel and Unusual Punishment. And Def. were acting beyond a good faith effort to restore order and acted malicious and sadistically to inflict unnecessary and wanton pain and deprivation of basic human needs.

## VII. Retaliation

75.) All actions and inaction against plaintiff by Def. described in paragraphs 16 through 50, were in retaliation for plaintiff allegedly assaulting Def. Blanchard. And All Def. involved worked with/around Def. Blanchard and they're subordinate to Def. Blanchard and they were in cahoots with eachother.

## RELIEF REQUESTED

(State what relief you want from the court.)

A. Issue a declaratory judgment stating that:

1.) The seizure and destruction of the Plaintiff's personal property and plumbing by Def. Blechard, Sorenum, Tangman, McCords, Lowrant, Price, Dalton, Newman, Henderson, John Doe I, II, and III violated Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth, Amendments to the United States Constitution.

2.) The physical abuse of the Plaintiff by Def. Blechard, Sorenum, Newman, Dalton, Henderson, John Doe I, II, and III and/or their failure to intervene and stop the physical abuse violated Plaintiff's rights under the Eighth Amendment to the United States Constitution and constitute an assault and battery under State laws.

3.) The deliberate indifference to Plaintiff's serious medical needs by Def. Blechard, Sorenum, Newman, Dalton, Henderson, John Doe I, II, II and III violated Plaintiff's rights under the Eighth Amendment to the United State Constitution.

4.) The disciplinary hearing of the Plaintiff by Def. Hamilton and Corley, which Def. Reed allowed and Def. Master upheld, violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

JURY DEMAND          Yes  ☒          No  ☐

Signed this ___1st___ day of ___September___, 20 _14_.

___Ralph Kings___
( Signature of Plaintiff)

| Name of Plaintiff: | Inmate Identification Number: |
|---|---|
| Ralph Kings (Vincent E. Hudson) | M02853 |
| Address: Menard Correctional Center P.O. Box 1000 Menard, IL 62259 | Telephone Number: |

B. Issue an injunction ordering Def. Pfister or his agents to:

1) Expunge the Jan. 8th, 2013, disciplinary reports and convictions described in this complaint, and all resulting disciplinary actions from the Plaintiff's institutional record.

2) Release the Plaintiff from Segregation and place him in general population, with restoration of all rights and privileges.

C. Award Compensatory damages in the following amounts:

1) $100,000 jointly and severally against Def. Blachard, Scroqum, Tangman, McBride, Lourant, Price, Clifton, Newhall and Pfister for the psychological and emotional injuries, and injuries to Plaintiff's quality-of-life, resulting from the described unreasonable seizure and deprivation of Plaintiff's personal property and plumbing.

2) $100,000 jointly and severally against Def. Blachard, Scroqum, Newhall, Clifton, Henderson, John Doe I, II, and III for the psychological, emotional, and physical injuries sustained as a result of the Plaintiff's beating.

3) $10,000 jointly and severally against Def. Blachard, Scroqum, Newhall, Clifton, Henderson, John Doe I, II, III and III for the psychological, emotional and physical injuries sustained as a result of their deliberate indifference to Plaintiff's serious medical needs.

4) $25,000 jointly and severally against Def. Hamilton, Corley, Reed and Pfister for the punishment, including deprivation of liberty and amenity, and psychological and emotional injuries from the Plaintiff's unlawful disciplinary proceeding.

D. Award punitive damages in the following amounts:

1) $20,000 each against Def. Blachard, Scroqum, Tangman, McBride, Lourant, Price, Clifton, Newhall, Henderson, John Does I, II, III and III.

2) $10,000 each against Def. Pfister, Reed, Hamilton, and Corley.

E. Grant such other reliefs as it may appear that the Plaintiff is entitled.

STATE OF ILLINOIS )
)   ss
COUNTY OF LIVINGSTON )

## AFFIDAVIT

I, Cordell Sanders, do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts.

On 1/6/13, I was an inmate housed at Pontiac Corr. Ctr. north cellhouse 113, Around Noon, I witnessed (Temporary) Lieutenant Tanabman c/o Levrant and c/o Price at cell 111 ordering Kings to cuffup and threatening him that if he dont cuffup, he will be maced and beaten up and stripped completly naked. Kings complied and was taken outside his cell by Tanabman and Price, Levrant went into Kings cell and confiscated his personal belongings. On 9/9/13 from 7am to 2PM Kings asked Scroggin, Newbell and Dalton for his property back. Some time after 2PM Lt. Scroggin, Dalton, & Newbell and Henderson went to cell 111 and ordered Kings to "uncover his window and cuffup". Kings told Lt. Scroggin that his 72 hours of stripped out was over and he just wanted his property, Scroggin told Kings that since he covered his window he gonna be placed on 72 hour strip out again. Kings asked to speak with Scroggins superior about his property, Scroggin threatened to mace Kings if he didnt uncover window and cuffup. Minutes later, Major Blackard and 3 unknown Prison guards approached cell 111, Major Blackard told Kings he's not here to talk or play and if he dont cuffup to be stripped out, he will mace him and come in the cell and beat his ass personally. Kings began to yell some thing I couldnt understand, Prison guards surrounded Kings door blocking my view, and his door hatch was opened, things was being said that I couldnt hear out due to loud noise from inmate yelling and banging doors. Minutes later ___ Over →
Continued

Pursuant to 28 USC 1746, 18 USC 1621, or 735 ILCS 5/1-109, I declare, under penalty of perjury that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivoulously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this 18 day of September, 2013.

Cordell Sanders R-41346
Affiant

MARK S. SPENCER
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
August 27, 2016

I smelled mace Kings door open up and y... ...ut and was taken to the round, hand cuffed, shackled and taken down the hall.

ILLINOIS DEPARTMENT OF CORRECTIONS

## OFFENDER'S GRIEVANCE

| Date: 2-21-13 | Offender: (Please Print) Fallon, Otis | ID#: M08443 |
|---|---|---|

| Present Facility: Pontiac Corr. Center | Facility where grievance issue occurred: Pontiac Corr. Center |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: __1__ / __9__ / 2013    Pontiac Correctional Center
  Date of Report    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This grievance is being used to appeal the (Alleged) Adjustment Committee Final Summary Reports decision/finding of guilt as described in 20 Il. Adm. Code 504 subpart F.

BELOW COMES THE basis of appeal.

(1)Inmate King #M08443 was found guilty of I.R. by an in-proper Adjustment Committee, which consisted of C. Prince staff member Helen Familhe L White and Adren Lesley. White in direct violation of 20 Ill. Admin. Code 504 subpart F Section 504.80 A.

**Relief Requested:** Disciplinary Report to be expunged from King M08443 records/files. All disciplinary actions against I/M resulting from Disciplinary Report to be terminated.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____  _____  ___/___/___
Offender's Signature          ID#           Date

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: ___/___/___

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____  _____  ___/___/___
Print Counselor's Name      Counselor's Signature   Date of Response

---

### EMERGENCY REVIEW

Date Received: ___/___/___

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____  ___/___/___
Chief Administrative Officer's Signature    Date

THIS IS THE grounds in which I'm basing our appeal on any may test of appeal be granted Please review ALL records and documents pertaining to this above-incident Thank you

Distribution: Master File; Offender
DOC 0046 (8/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 1-21-13 | (Please Print) Ralph Kinns | | ID#: M03363 |
|---|---|---|---|
| Present Facility: Pontiac Corr Center | | Facility where grievance issue occurred: Pontiac Corr Center | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify): Retaliation! Bill of Rights Violation by Staff

- [ ] Disciplinary Report: ____ / ____ / ____
      Date of Report         Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): 12/1/12, around noon, while being escorted to RCU I'm Kinns allegedly assaulted J. Black and 1st shift's Major of North Cell House (NCH) After returning from RCU later that afternoon I'm was escorted back to his cell in North Cell House's 1 gallery cell 11 (N-111), by Lt Cornavum C/O McBride, C/O Tangman and C/O Vincent, and was literally stripped of everything inside his cell by above staff, even including the clothes on his back. During the strip I'm was told he was being stripped-out for above assault. And when I'm attempted to refuse allowing the staff to take off his clothes he was warned, staff became more aggressive and threatened to beat I'm's ass if he resisted. I'm was left inside that cold-steel metal doored-concrete slab bed posted-cell NAKED for 24 hours. Only to be given a mattress, jumpsuit and shower shoes 12/2/12. Then left deprived of all the rest of his personal property (hygiene products, clothing, legal material etc.) inside cell N-111 for another 9 days, until 12/11/12.

Relief Requested: To never again be unreasonably deprived of property without due. And to never be retaliated against, in any form or fashion, for any reason, by any Pontiac staff. Plus, legal actions against all staff involved in above incidents.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____   _____   ____/____/____
Offender's Signature              ID#      Date

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

Date Received: ____/____/____   [ ] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to
                                                                                Administrative Review Board, P.O. Box 19277,
                                                                                Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____   _____   ____/____/____
Print Counselor's Name             Counselor's Signature     Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____/____/____   Is this determined to be of an emergency nature?   [ ] Yes: expedite emergency grievance
                                                                                    [ ] No: an emergency is not substantiated.
                                                                                    Offender should submit this grievance
                                                                                    in the normal manner.

_____                              ____/____/____
Chief Administrative Officer's Signature                     Date

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)
Printed on Recycled Paper

On 1/6/13, around 11 am, (Temporary) Lt. Tarpman, C/O Lovrant and C/O Force came to I/M's cell R-111, ordering him to cuff-up. I/M asked why and was told he was being stripped-out for allegedly committing a sexual misconduct while inside his cell during A.M. med. pass-out. I/M attempted to plead his case and was told if he dont cuff-up he'll be maced, beaten and still stripped-out. I/M complied and staff took everything from out I/M's cell except the clothes he was wearing, his shower shoes and his mattress. And was told his property would be returned after 72 hours, but, 72 hours later, 1/9/13 Lt. Scranum & gallerys C/O Newbell and C/O Colton, refused to return I/M's property, for no justifi-able reason. (Which led to the 1/9/13 incident (see separate grievance dated 1/31/13, on excessive force and cruel punishment) and ended with I/M still being deprived of his property for another 8 days, until 1/11/13.

I/M believe the seizure and deprivation of his property, administered by former staff in above incidents was done maliciously, in retaliation for above mentioned alleged assault. And clearly violated I/M's Bill of rights. Fourth Amendment - prohibition against unreasonable search and seizure, Fifth Amendment - pro-hibition against deprivation of property without due process, and Fourteenth Amendment - provision for equal protection.

DOC 0046 (R/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| | | |
|---|---|---|
| Date: 1/21/13 | (Please Print) Ralph King | ID#: M00363 |

| Present Facility: Pontiac Corr. Center | Facility where grievance issue occurred: Pontiac Corr. Center |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☒ Other (specify): Excessive, Force and Cruel Punishment by staff

☐ Disciplinary Report: ___/___/___  
       Date of Report        Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): 1/9/13, around 2 p.m., after continously being denied his property and to speak to a Lt. about his property, by Lt. at cell house (NCH) gallery, C/O Catton and C/O Penhall I/M Covered his observation window inside his cell, cell 111. Lt. Scroggum and other C/O's responded to I/M's cell and ordered him to uncover his window and cuff-up. I/M told Lt. that his 72 hour strip-out ended today and he did not want his property back. Lt. responded, Since I/M covered window he's being place on another 72 hour strip-out and ordered I/M to cuff-up to have remaining property took out cell. I/M refused and asked to speak with Lt.'s superior Lt. then threatened to mace I/M if he didn't cuff-up. And I/M still refused. __ Minutes later Major Blackard arrived on location and told I/M he's not here to talk or deal if I/M don't cuff-up to be stripped-out he will mace I/M and go inside his cell and beat his ass personally. Out of fear of the Majors threats and as a precautionary measure, I/M immediately began to __

**Relief Requested:** To never again be a victim of excessive force or suffer cruel or unusual punishment. And to never be retaliated against in any form or fashion for any reason, by any Pontiac Staff. Plus, legal action against all staff involved in above incidents.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____  ____  ___/___/___  
Offender's Signature      ID#      Date

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

Date Received: ___/___/___

☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277 Springfield, IL 62794-9277

Response: _____

_____  _____  ___/___/___  
Print Counselor's Name    Counselor's Signature    Date of Response

---

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____  ___/___/___  
Chief Administrative Officer's Signature    Date

Printed on Recycled Paper

construct a make-shift shelter around his vent, in an attempt to breath and be protected from mace (C.C. spray), while N/Mag continued threatening and ordering I/M to cuff-up, until Mager finally maced I/M's cell. I/M endured mace, from behind shelter, until he couldn't take it anymore. And I/M proceed to his door to cuff up and be let out of cell, when the checkhole was opened and cell was maced again, only this time mace hit I/M's face and body. Then the door was opened and, out of fear and of being beaten to death inside cell where cameras can't see, I/M blindly pushed out of cell door where he was instantly grabbed, slammed to floor and restrained by staff.

Next I/M was lifted off floor, dragged/pushed down a gallery to the outside of the cell house. Once outside, I/M was hit with blunt object causing him to lose balance and staff slammed him to ground, where staff sat on I/M's back with their knees, violently twisted and bended his hands and hand-cuffs, chocked him around breach, punched him in face and head, and stomped/stood on his legs, ankles and shackles, for an immeasurable amount of time. Until eventually, I/M was lifted to his knees and his head was pulled back in an attempt to have his eyes cleaned, by Med. Tech but I/M couldn't fully open his eyes, due to pain from mace, plus staff's contaminated hands trying to pry I/M eyes opened, only made pain worse, and harder to open eyes. So Med. Tech claimed he couldn't properly clean I/M's eyes. And I/M began telling Med. Tech, that he's been beat up, he think his head is broke and he need medical treatment but Med. Tech. never responded and I/M couldn't see if he'd left.

Finally, I/M was carried, because he couldn't walk due to the grip of the shackles to his ankles, back back into the cell house to 1 gallery and placed in cell 147, where I/M was aggressively stripped of all his clothes and left inside the cold concrete slab bed-seat cell, without having eyes cleaned out or being given a shower, with sink and toilet turned off, and no property (hygiene products, clothes, mattress, etc.). Therefore having to suffer, the burning mace on his body, for 2 days. Which stayed active as a result of perspiration. And especially in his genital area, armpits and head.

I/M believes the excessive use of force and cruel punishment administered by Pontiac staff, was beyond a need forth efford to restore order and was done malicious and sadistically, to inflict harm, in retaliation for the 12/1/12 assault I/M was alleged of, or above mentioned Mager. And clearly violated I/M's Eighth Amendment prohibition against cruel or unusual punishment.

STATE OF ILLINOIS )
                   )  ss
COUNTY OF LIVINGSTON )

## AFFIDAVIT

I, Cordell Sanders , do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts. On 12-1-12, I was an incarcerated citizen housed at Pontiac Correctional Center Cell North 113, I witnessed Lt. Scrogum, C/o McBride and C/o Tangman and C/o Lovrant escourt inmate Kings to cell around Noon. Scrogum, McBride and Tangman took Kings inside the cell and stayed in the cell with Kings for about 3 minutes while Lovrant stood outside. Scrogum, McBride and Tangman left out cell 111, with Tangman holding Kings Shoes, jumpsuit and white clothing articles. After the officers left, Kings asked me if I knew how long he would remain in his cell naked. I told Kings that it depends on how mad they are at him. On 12-2-12 Kings informed me that he received a mattress, jumpsuit and shower shoes, while I was asleep. From 12-4-12 to 12-10-12, Kings asked numerous officers on 1st, 2nd and 3rd shift for his property and never received it. On 12/11/12 Kings received his property.

Pursuant to 28 USC 1746, 18 USC 1621, or 735 ILCS 5/1-109, I declare, under penalty of perjury that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this 16 day of September, 2013

Cordell Sanders R-41346

Affiant

MARK G. SPENCER
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
August 27, 2016